

FILED
JUN 09 2010
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 10-30014-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS |
| JASON TODD GARREAU, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant, Jason Todd Garreau (Garreau), has moved to suppress evidence (a handgun) seized from the vehicle he was driving, two sets of statements he made to law enforcement officers following his arrest, and a urine sample he provided to officers. He claims that the search of the vehicle and seizure of the gun located in the trunk thereof were conducted in violation of his rights under the Fourth Amendment to the United States Constitution and that the statements he subsequently made and the results of the urine sample taken from him while at a local jail should be suppressed under the Exclusionary Rule.

Plaintiff, United States of America (Government), has filed a response to Garreau's motion, resisting most of it. With respect to Garreau's statements, the Government avers that "it does not intend to introduce either of [them]... in its case in chief" but nonetheless requests the Court to "find that the statements were not coerced and are available for impeachment purposes." As concerns the urine sample, the Government states that "it will not utilize evidence derived from the [ ] sample" but asks for a finding "that the [ ] sample was not obtained as a deliberate, intentional attempt to legally secure evidence."

On May 27, 2010, the Court held an evidentiary hearing on the motion. Two witnesses testified at the hearing and five exhibits were received into evidence. The parties also stipulated that Rebecca LaPlante was the owner of the vehicle Garreau was stopped in and that he had permission from her to drive it on the day of his arrest.

Because the suppression motion is a dispositive one, the Court is only authorized to determine the same on a report and recommendation basis. See 28 U.S.C. § 636(b)(1). After careful consideration of all of the evidence and testimony presented, the Court does now make and submit the following findings and recommendation for disposition of the motion.

## I.

On January 5, 2009, Federal Bureau of Investigation (FBI) Agent James Van Iten contacted Pierre Police Officer John Wollman[1] and advised Wollman that a confidential source had reported Garreau had a stolen handgun in his possession and had left Eagle Butte and was en route to Pierre, South Dakota[2] to sell it. Wollman was further informed that Garreau was driving a grey 2005 Chevy Impala with South Dakota license no. 24R717. Wollman then contacted Pierre Police dispatch and was advised that Garreau's driver's license had been suspended and that there was an active warrant for Garreau's arrest out of Pennington County, South Dakota for failure to appear on a driving under suspension charge. Wollman notified other officers in the area to be on the lookout for the vehicle Garreau was driving.

---

[1] Both Van Iten and Wollman were, at the time, members of the Northern Plains Safe Trails Drug Enforcement Task Force.
[2] Eagle Butte is located about 90 miles northwest of Pierre.

2

While proceeding west of Ft. Pierre, South Dakota, Trooper Jon Stahl, of the South Dakota Highway Patrol, saw a vehicle matching the description of the Garreau vehicle traveling east on U.S. Highway 14 at what appeared to be an excessive speed. Using his radar, Stahl clocked the speed of the vehicle at 71 mph, 6 miles per hour over the posted speed limit. Stahl pulled the vehicle over and advised the driver, the sole occupant, of the reason for the stop. The driver was unable to produce a driver's license but did present a Cheyenne River Sioux Tribal I.D. card that identified him as Garreau.

Stahl had Garreau sit in the patrol car where Stahl completed a warning ticket for the speeding violation. Stahl also ran a status check and was told that Garreau's driver's license had been suspended and that Garreau had an outstanding state warrant for driving with a suspended license. Garreau was handcuffed, searched and placed in the back of the patrol car. A knife was removed from Garreau's person during the search.

Stahl then asked if Garreau had someone who could come and get the vehicle and Garreau responded in the negative. While Garreau remained in the patrol car, Stahl searched the vehicle and inventoried the contents thereof, pursuant to the Highway Patrol's written inventory search policy. After opening the trunk to the vehicle, Stahl observed an item wrapped in a white plastic bag underneath the spare tire. Inside the bag was a Dessert Eagle .44 caliber handgun that Stahl took custody of. Stahl ran a check through State Radio and learned that the gun had been stolen from Huron, South Dakota.

Following the seizure of the handgun, Wollman, who had arrived at the scene to assist Stahl, went to Stahl's patrol car, and had a brief conversation with Garreau about the stolen

3

gun. During this conversation, Garreau acknowledged that he knew the gun was stolen. At no time prior to or during the conversation was Garreau advised of his Miranda rights.

Garreau was subsequently taken to the Hughes County Jail in Pierre where he was interviewed. There, after being Mirandized and agreeing to talk to investigators, including Wollman, Garreau made incriminating statements. At the conclusion of the interview, Garreau provided a urine sample.

Citing Arizona v. Gant, 129 S.Ct. 1710 (2009), Garreau seeks to suppress the handgun, found in the trunk of his vehicle, on the grounds that the search was not a permissible one incident to arrest. He further seeks to suppress the statement he made at the scene, because it was obtained in violation of Miranda, and the statements he made and the urine sample he gave at the Jail, as fruits obtained from a poisonous tree.

## II.

In Gant, the Supreme Court held that:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe a vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

129 S.Ct. at 1723-24. Garreau claims that since he had already been removed from his vehicle, handcuffed and placed in the back of Stahl's patrol car prior to the search, the search of the vehicle, incident to arrest, and the seizure of the handgun found in it, were illegal.

4

The Government concedes that Stahl's search cannot be upheld as a search incident to arrest under Gant.[3] Relying on cases decided after Gant, the Government asserts that the search was a valid inventory search. See e.g. United States v. Garrison, No. 10-00033-01-CR-W-ODS, 2010 WL 2076974 at ** 1-3 & n. 3 (W.D.Mo. May 24, 2010); Scroggins, 2010 WL 750057 at ** 3-4 & n. 3; Specht, 2009 WL 3642987 at ** 1-2; United States v. Forte, No. 4:08CR00251 JLH, 2009 WL 3062313 at ** 1-3 (E.D.Ark. Sept. 18, 2009); see also United States v. Sands, 329 Fed. Appx. 794, 798 n. 1 (10th Cir. 2009) (inventory exception applies to post-Gant searches of vehicles).

### III.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A "cardinal principle" in Fourth Amendment search and seizure jurisprudence is that searches conducted outside the judicial process, i.e. without prior approval by a judge, are *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978). When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception. 437 U.S. at 391.

One such exception, which has been recognized and applied for more than three decades, is an inventory search. South Dakota v. Opperman, 428 U.S. 364, 367-76 (1976);

---

[3] Despite the Government's concession, there appears to be a serious question as to whether Gant is even applicable to this case. Various courts have concluded that for searches conducted before Gant was handed down, the previous state of the law controls because officers acted in good faith reliance on the law as it existed prior to Gant. United States v. Scroggins, No. 09:00060-01-CR-W-DW, 2010 WL 750057 at * 4 (W.D.Mo. Feb. 26, 2010); United States v. Specht, No. 8:09CR101, 2009 WL 3642987 at * 2 (D.Neb. Oct. 26, 2009); United States v. Allison, 637 F.Supp.2d 657, 669-74 (S.D.Iowa. 2009). In this case, the search took place more than three and half months before Gant was decided.

5

United States v. Hall, 497 F.3d 846, 850 (8th Cir. 2007). This exception is premised on and in response to "three distinct needs: the protection of the owner's property while it remains in police custody, the protection [of] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." Opperman, 428 U.S. at 369 (internal citations omitted). Because they are performing an "administrative or caretaking function," police need not have a search warrant or probable cause before they search a vehicle. Id. at 369-70 n. 5; United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993).

The central question, when evaluating the propriety of an inventory search, is whether, based on the totality of the circumstances present, the search was reasonable. Hall, 497 F.3d at 851 (citing United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005)). Inventory searches that are "conducted according to standardized police procedures" are reasonable. Id. Adherence to standardized procedures is necessary to ensure that the search is not merely "a ruse for general rummaging in order to discover incriminating evidence," since inventory searches are often conducted in the absence of the safeguards of a warrant and probable cause. Kennedy, 427 F.3d at 1143 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

The requirement that police follow standard procedures when conducting inventory searches does not mean that the search must be made in a "totally mechanical 'all or nothing' fashion." United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004) (quoting Wells 495 U.S. at 4). Rather, police are allowed to use discretion as to the proper course of action to take "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Hall, 497 F.3d at 851 (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)). A police officer's residual

6

judgment, that is exercised and based on legitimate concerns related to the purposes of an impoundment, does not run afoul of the Constitution. United States v. Kimhong Thi Le, 474 F.3d 511, 514 (8th Cir.) (citing Petty, 367 F.3d at 1012), cert. denied, 550 U.S. 969 (2007).

Police "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." Kennedy, 427 F.3d at 1144 (quoting Marshall, 986 F.2d at 1176). Even if a police officer suspects he might uncover evidence in a vehicle, he can still tow the vehicle and inventory its contents, as long as the impoundment is otherwise valid. Hall, 497 F.3d at 851 (citing Petty, 367 F.3d at 1013). The Constitution, however, does not permit police to "raise the inventory-search banner in an after-the-fact attempt to justify what was… purely and simply a search for incriminating evidence." Kennedy, 427 F.3d at 1144 (quoting Marshall, 986 F.2d at 1175).

In the instant case, Stahl acted in accordance with established written procedures when he decided to tow Garreau's vehicle and to conduct an inventory search of the same. The South Dakota Highway Patrol policy manual specifically provides that if a custodial arrest of a motor vehicle operator is made and no driver is available, the vehicle is not to be left at the scene but rather towed to a place of safe-keeping. Hrg. Ex. 2, § 9.1406. The policy manual also provides that all vehicles are to be inventoried whenever an officer makes a physical arrest of the operator and the vehicle is removed or ordered to be removed to a place of safe-keeping. Id. at § 9.1404. And, when conducting the inventory of the contents of a vehicle, an officer is to look through "all areas of the vehicle, trunk, glove compartment and luggage or other closed containers within the vehicle." Id. at § 9.1403. Stahl testified

7

that he conducted his search pursuant to this policy and the policy itself was produced and received as an exhibit at the suppression hearing. See and compare United States v. Sullivan, No. CR 09-40043, 2009 WL 2045978 at *1 (D.S.D. July 13, 2009).

Stahl also complied with the inventory search procedures that were in place. See and compare Kennedy, 427 F.3d at 1144-45; Marshall, 986 F.2d at 1175-76. Stahl's search of the vehicle and the trunk, where the handgun was found, were within the purview of the Highway Patrol's policy manual governing inventory searches and the discretion given to him under the same. The record clearly indicates that Garreau was arrested and taken into custody on an existing warrant for driving under suspension, and that there was no one available to remove the vehicle from its roadside parking spot. Finally, Stahl identified and listed the non-contraband property he found in the vehicle in a separate written report. Hrg. Ex. 3. This report reflects that the vehicle was inventoried by reason of the Highway Patrol's "Policy". Id.

Garreau argues that the inventory search was invalid because it was conducted for the ulterior motive of searching for the stolen handgun he was reported to be traveling with. He maintains that the inventory search was merely a pretext to legitimize what was really an impermissible investigative search. The Court disagrees.

The presence of an investigative motive does not invalidate an otherwise proper inventory search. United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999), cert. denied, 528 U.S. 1119 (2000); United States v. Lewis, 3 F.3d 252, 254 (8th Cir. 1993), cert. denied, 511 U.S. 1111 (1994); see also Marshall, 986 F.2d 1175-76 (holding police are not precluded from conducting an inventory search when they lawfully impound the vehicle of an

individual they also suspect to be involved in a crime). Here, Stahl had valid reasons to tow Garreau's vehicle to a place of safe-keeping and to conduct an inventory search of the same. The vehicle was parked alongside a busy U.S. highway, no one was available to move it, the vehicle was four years old, in good condition (no damage), owned by another person, and Stahl, Wollman and/or the agencies they work for, were responsible for its protection. The fact that Stahl and/or Wollman also suspected Garreau was involved in firearms trafficking and might have evidence of such activity in the vehicle did not invalidate the inventory search or demonstrate bad faith on the part of either or both of them. Id.; see also Hall, 497 F.3d at 852-53 (evidence that officers knew the defendant's vehicle was linked to the manufacture of methamphetamine and secured the vehicle because of this drug connection did not obviate an otherwise valid inventory search or establish that the officers acted in bad faith).

The Court therefore finds and concludes that the warrantless search of the vehicle Garreau was driving and the seizure of the handgun found in the trunk to it did not transgress Fourth Amendment strictures so as to require suppression. Accordingly, the gun is admissible, in the Government's case in chief, at trial.

IV.

Garreau next claims that he was not advised of his Miranda rights, while sitting handcuffed in Stahl's patrol car, prior to making incriminating statements. He contends that he was in custody at the time he was questioned and admitted to knowing that the handgun in his possession was stolen and as such was entitled to Miranda warnings. Because no such
9

warnings were ever given to him before being questioned, his admissions must be suppressed.

To protect a suspect's Fifth Amendment right not to be "compelled in any criminal case to be a witness against himself", the Supreme Court created concrete constitutional guidelines requiring that the suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Miranda warnings, however, are not required for "general on-the-scene questioning as to facts surrounding a crime," which does not present "the compelling atmosphere inherent in the process of in-custody interrogation." Miranda, 384 U.S. at 477-78. In order for Miranda to apply, the challenged statements must have been made while the suspect was in custody and in response to interrogation. United States v. Howard, 532 F.3d 755, 761 (8th Cir. 2008).

The ultimate inquiry in the custody analysis "is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (*en banc*) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (*per curiam*)), cert. denied, 543 U.S. 1145 (2005). "Two discreet inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he [ ] was not at liberty to terminate the interrogation and leave." LeBrun, 363 F.3d at 720 (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)). A court must, in its analysis, "keep[] in mind that the [custody] determination is based on the objective

circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned." Id. (internal quotation and citation omitted).

The custody issue in this case is not even subject to debate. At the time Wollman and Garreau conversed, Garreau was in wrist restraints, under arrest and sitting in the back seat of a locked patrol car. He was, without question, in custody within the meaning of Miranda.

He was also interrogated by Wollman. "Interrogation" includes both direct questions and words or actions that an officer should know are "reasonably likely to elicit an incriminating response from the suspect." United States v. McGlothen, 556 F.3d 698, 701 (8th Cir.) (quoting United States v. Briones, 390 F.3d 610, 612 (8th Cir. 2004), cert. denied, 545 U.S. 1122 (2005)), cert. denied, 129 S.Ct. 2812 (2009). Determining whether specific questions or statements amount to interrogation depends on the circumstances of each case, particularly whether they are objectively and reasonably likely to result in incriminating responses by the suspect, as well as the nature of the context in which they are given. Rhode Island v. Innis, 446 U.S. 291, 300-02 (1980).

After the handgun was found, Wollman went over to Stahl's patrol car to talk to Garreau. There, Wollman identified himself and said that he and Stahl had found the stolen gun in the vehicle Garreau had been driving. Wollman then asked Garreau about the gun whereupon Garreau admitted that he knew the gun was stolen. Significantly, Garreau said nothing about a stolen gun being in the vehicle before the gun was found. Wollman's question was the kind of investigative query that was intended to elicit an inculpatory reply from Garreau. As such, the question constituted "interrogation" under Miranda.

Garreau's statement, confessing knowledge of the handgun being stolen, was therefore the result of custodial interrogation, prior to which he should have been, but was not, advised of his Miranda rights. Consequently, his statement must be suppressed and cannot be used as substantive evidence at trial. See United States v. Stoneman, No. CR 09-30101-RAL, 2010 WL 1610065 at ** 6-7 (D.S.D. April 20, 2010).

The fact that a statement has been suppressed, however, does not necessarily prevent the same from being used as impeachment evidence in the event the Defendant testifies at trial. The premise behind allowing tainted evidence to be used as impeachment is simple: if the defendant takes the witness stand and gives testimony that is inconsistent with his own previously recorded statements or other evidence, the Constitution does not require the government to leave the lie unchallenged for to do so would permit the defendant to use the law as a means of effectuating perjury. United States v. Baftiri, 263 F.3d 856, 857 (8th Cir. 2001); see also United States v. Rowley, 975 F.2d 1357, 1361 (8th Cir. 1992) (voluntary statements, even if otherwise inadmissible, may be used to impeach a testifying defendant).

Garreau's statement to Wollman was made voluntarily and was not the product of coercion, express or implied.[4] See and compare Mincey, 437 U.S. at 397-402. This being

---

[4] A statement is involuntary when it is extracted by threats, violence or express or implied promises sufficient to overbear a suspect's will and to critically impair his capacity for self-determination. LeBrun, 363 F.3d at 724; United States v. Brave Heart, 397 F.3d 1035, 1040 (8th Cir. 2005). Whether the suspect's will has been over-born is determined by examining the totality of the circumstances, including both the conduct of the officers in exerting pressure on the suspect and the suspect's ability to resist that pressure. Id.

After reviewing the record and assessing Wollman's credibility as a witness, the Court is unable to find that the requisite coercive or over-reaching conduct was present so as to make Garreau's post-arrest statement, in Stahl's patrol car, involuntary. No threats or promises were made to Garreau and no undue influence or pressure was exerted on him. Garreau agreed to talk about the handgun with Wollman at the scene and did so without hesitation. There can be little doubt that Garreau's statement was voluntary and not the offspring of coercive action that undermined his ability to exercise his free will and decide for himself what he wanted to do. See United States v. Plumman, 409 F.3d 919, 924-25 (8th Cir. 2005); United States v. Bordeaux, 400 F.3d 548, 560-61 (8th Cir. 2005);

(continued...)

the case, Garreau's inculpatory statement, relating to the stolen gun, is admissible at trial for impeachment purposes when and if he testifies. Oregon v. Hass, 420 U.S. 714, 720-24 (1975); Harris v. New York, 401 U.S. 222, 223-26 (1971); see also United States v. Havens, 446 U.S. 620, 624-28 (1980) (holding that the rationale of Hass and Harris permit the use of illegally obtained evidence to impeach statements made by the defendant on cross-examination); Stoneman, 2010 WL 1610065 at *7 (concluding that the defendant's incriminating but voluntary statements, made without the necessary waiver of Miranda rights, were admissible for impeachment purposes).

## V.

Garreau also seeks to suppress the statements he made later that day to Wollman and Jason Baldwin, a Special Agent with the South Dakota Division of Criminal Investigation (DCI), at the Hughes County Jail under the "fruit of the poisonous tree" doctrine set out in Wong Sun v. United States, 371 U.S. 471 (1963). He argues that his admissions flow from the illegal search of the vehicle he was driving. The Court, however, has already determined that the search was valid under the inventory exception to the search warrant requirement and for this reason, Garreau's argument must fail.

So too must the assertion, if and to the extent that the same is made in Garreau's moving papers, that his subsequent statements emanated from, and were tainted by, his initial Miranda violation. The rationale, though, requires some analysis and review of Supreme Court precedent.

---

(...continued)
see also Stoneman, 2010 WL 1610065 at ** 4-7 (the defendant's statements made to tribal officers in a patrol car and during a subsequent interview at the tribal jail were voluntary and therefore admissible at trial as impeachment evidence).

In Oregon v. Elstad, 470 U.S. 298 (1985), the defendant was arrested at his house on a burglary charge. 470 U.S. at 300-01. In a brief encounter there, he made incriminating statements in response to questioning that violated Miranda because no warnings had been given. Id. at 301. He was then taken to the sheriff's office, given Miranda warnings and subjected to a much more thorough interrogation, after which he gave a full statement. Id. The issue was whether the second statement was the tainted fruit of the earlier questioning. Id. at 302-03. The Supreme Court held that the Miranda violation did not require suppression of the second statement. Id. at 314-17. In doing so, the Court observed:

> [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

Id. at 314.

Nearly two decades later, in Missouri v. Seibert, 542 U.S. 600 (2004), the Supreme Court considered a police protocol for custodial interrogation that called for the giving of no warnings of the rights to silence and counsel until interrogation had produced a confession, followed by Miranda warnings and questioning intended to elicit the same confession. 542 U.S. at 604. The Seibert Court distinguished Elstad and held that both confessions must be suppressed because of the initial Miranda violation. Id. at 614-17. The plurality and Justice Kennedy, who provided the decisive vote, each utilized different tests for determining when this type of "staged" or "two-step" interrogation technique mandates suppression of statements. Id. at 614-17, 621-22 (Kennedy, J., concurring). The Eighth Circuit has adopted Justice Kennedy's more narrow approach in cases involving such a technique, see United

14

States v. Ollie, 442 F.3d 1135, 1141-42 (8th Cir. 2006), and determined that Seibert requires that an officer's interrogation technique be a "designed, deliberate or calculated circumvention of Miranda," United States v. Elzahabi, 557 F.3d 879, 884 (8th Cir.), cert. denied, 129 S.Ct. 2781 (2009); accord United States v. Torres-Lona, 491 F.3d 750, 757 (8th Cir. 2007), cert. denied, 552 U.S. 1121 (2008).

Unlike the defendant in Seibert, Garreau was not subjected to an interrogation technique intended to drain the substance out of Miranda or to thwart its purpose. No improper tactics were employed by Wollman and Baldwin and the two questioning sessions were separated by both time and location. Where, as here, the initial statement was voluntary, the proper inquiry is whether Garreau's subsequent statements, after being properly advised of his rights, were voluntary based on the surrounding circumstances. Elstad, 470 U.S. at 318. The Court finds and concludes that these statements were indeed voluntary.

No evidence was presented that Wollman used compulsion in eliciting Garreau's first statement, that the Miranda waiver signed by Garreau before the second statements was not knowing, voluntary or intelligent, or that the later statements were in any way coerced. The second statements not only concerned the handgun but also Garreau's use of illegal drugs, the latter being a separate and independent basis for a Miranda advisement prior to questioning him on this subject matter.

"This case is governed by Elstad, not Seibert." United States v. Walker, 518 F.3d 983, 985 (8th Cir. 2008). Because Garreau's second statements were knowingly, voluntarily and

intelligently made, they were not invalidated by his prior, illegally obtained statement and need not be suppressed. Id. at 985-86.[5]

## VI.

Lastly, Garreau seeks to suppress the urine sample, taken from him at the conclusion of his interview with Wollman and Baldwin, and the results of any testing conducted on the sample. He maintains that such evidence was derived from and is the tainted fruit of the search of the vehicle he was stopped in, his on-the-scene statement to Wollman and/or the statements he made thereafter at the Jail. Suppression, however, is uncalled for for several reasons.

At the outset, the vehicle search did not violate the Fourth Amendment. As already explained, the search was a valid inventory search conducted according to standardized procedures promulgated by the Highway Patrol. See Hall, 497 F.3d at 850-53. Similarly, Garreau's statements, made at the Jail, were not obtained in violation of the Fifth Amendment or his Miranda rights. See United States v. Running, No. CR 09-30026-RAL, 2009 WL 4891706 at ** 3-10 (D.S.D. Dec. 16, 2009).

Furthermore, the fact that Garreau's statement, made in the patrol car, was given in violation of Miranda, does not require suppression of the urine evidence that was subsequently obtained from him. The Supreme Court has made clear that the failure to give Miranda warnings does not require the suppression of physical evidence derived from a

---

[5] Given the Government's representation that it does not intend to introduce either of Garreau's post-arrest statements in its case in chief, but only for impeachment purposes, his motion may, for the most part, be moot. Nonetheless, both the Government and Garreau discuss and cite cases which relate to the admissibility of his statements, made at the Jail to Wollman and Baldwin, as substantive evidence. "Just to be sure," the Court has endeavored to address all relevant issues/claims so that the same are fully adjudicated and preserved for review. Of course, if the statements are admissible in the Government's case at trial, a fortiori, they may be used to impeach any contrary or inconsistent testimony later given by Garreau.

suspect's unwarned, but voluntary, statements. United States v. Patane, 542 U.S. 630, 641-44 (2004); see also United States v. Buchanan, No. CR 07-50118-AWB, 2008 WL 2704865 at **2-3 (D.S.D. July 7, 2008) (denying a motion to suppress derivative evidence obtained after an Edwards violation based on the Exclusionary Rule), aff'd, 574 F.3d 554 (8th Cir. 2009).

Beyond this, Garreau consented to providing the urine sample and that consent was voluntary based on the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 226-27 (1973); see also United States v. Mendenhall, 446 U.S. 544, 557-58 (1980) (the evidence plainly supported the trial court's view that the defendant's consent to search of her person at the DEA office was freely and voluntarily given). His custodial status, while relevant, was not enough in this case to vitiate the voluntariness of his consent. See United States v. Watson, 423 U.S. 411, 424-25 & n. 14 (1976); see also United States v. Sanders, 424 F.3d 768, 773-74 (8th Cir. 2005) (applying personal and environmental characteristics and concluding that the search of the defendant's person was voluntarily given).

In any event, the Government states that it will not utilize the evidence derived from the urine sample at trial. Whether this statement means that the Government will abstain from using such evidence altogether or still reserves the right to offer the same for impeachment purposes is unclear. Regardless, the statement provides an adequate and independent basis for denying, at least in part, Garreau's motion to suppress the sample and any test results gleaned therefrom.

## VII.

Based on the foregoing discussion and the record as it now stands, the Court hereby RECOMMENDS that Garreau's Motion to Suppress Evidence and Statements, found at Docket No. 14, be denied in all respects.

Dated this 9th day of June, 2010, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
             Deputy
(SEAL)

## NOTICE

Garreau shall have fourteen (14) calendar days from today's date within which to file any objections to this Report and Recommendation or be barred from attacking the same before the assigned United States District Judge.